**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| PLASTIPAK PACKAGING, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ICE RIVER SPRINGS WATER CO. INC. )<br>AND ICE RIVER SPRINGS USA, INC. )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 1:19-cv-11193-IT |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY NIAGARA BOTTLING
LLC'S MOTION FOR PROTECTIVE ORDER REGARDING
DOCUMENTS FROM PRIOR LITIGATION**

Non-party Niagara Bottling, LLC ("Niagara") moves pursuant to Fed. R. Civ. P. 26(c) for a protective order to prevent the production in this case of materials containing highly confidential and sensitive Niagara information from an earlier lawsuit between Plastipak and Niagara, *Plastipak Packaging, Inc. v. Niagara Bottling, LLC*, No. 1:17-cv-01463-AJT-MSN (E.D. Va.) (filed Dec. 22, 2017) ("the *Niagara* Litigation").

**Background**

Niagara is an industry-leading private company that manufactures and sells store brand, private label, and Niagara-branded bottled water throughout the United States and abroad. Plastipak and Ice River are among Niagara's competitors: Plastipak manufactures and sells plastic containers for a variety of consumer products, including bottled water; its affiliate Absopure, under common ownership with Plastipak, is a direct Niagara competitor that manufactures and sells bottled water; and Ice River is another direct Niagara competitor that also

manufactures and sells bottled water. (Dec. 5, 2019 Decl. of Pamela Anderson Cridlebaugh ("Cridlebaugh Decl.") ¶¶ 9–10.)

In December of 2017, Plastipak sued Niagara in the *Niagara* Litigation, alleging willful infringement of seven Plastipak patents relating to lightweight neck finishes for plastic bottles. (Plastipak now asserts the same seven patents against Ice River in the current lawsuit, in addition to three other patents not at issue in the *Niagara* Litigation.) The *Niagara* Litigation settled on September 26, 2018, on the eve of trial.

During the *Niagara* Litigation, Niagara was required to produce documents containing highly sensitive and valuable business information, including documents reflecting its trade secrets, product research and development information, and financial information. (Cridlebaugh Decl. ¶¶ 5–7.) In the course of the litigation, Niagara's highly sensitive business information also was disclosed in interrogatory responses, during depositions, and in expert reports. (*Id.*)

The Niagara research, development, design, engineering, manufacturing, and operation of its products produced in the earlier litigation focused on Niagara's lightweighting and innovation efforts, alternative designs available to Niagara, development and manufacturing of the Niagara products accused by Plastipak, and development and manufacturing of the Niagara products practicing the patents Niagara asserted against Plastipak. (*Id.*)

Niagara's highly confidential and sensitive financial information produced in the earlier litigation included information relating to Niagara's business and financial performance; Niagara's financial statements and accounting systems; and information on the cost of development, pricing, sales, and profitability of Niagara's products. (*Id.*) Niagara's financial information is particularly sensitive since Niagara is a privately-owned company that maintains strict confidentiality regarding its finances. (*Id.*)

These disclosures were made under a protective order with three levels of confidentiality for various types of sensitive and non-public documents, material, or testimony, including trade secrets and competitive business information; financial information; and "other confidential or proprietary information, including technical information." (*Niagara* Litigation Stipulated Protective Order ("Niagara Protective Order"), Ex. 3 to Decl. of Herbert Finn in Supp. of Defs.' Mot. to Compel Pl. to Produce Docs. from the Prior Related Litig., ECF No. 39-3 ("Finn Decl."), ¶¶ 2-3, 19.) The lowest confidentiality tier restricted access to the attorneys of record, the *Niagara* court, experts, and one individual from each party to the extent necessary for the *Niagara* Litigation. (*Id.* ¶ 4.) The middle confidentiality tier restricted access to the attorneys of record, the *Niagara* court, and experts, where the information was deemed sufficiently sensitive to require such a designation. (*Id.* ¶ 5.) The highest confidentiality tier, intended for highly confidential technical documents, limited access to the attorneys of record, the *Niagara* court, and experts, and also prevented those individuals from participating for one year in the prosecution of a patent application relating to the subject matter of the disclosed information. (*Id.* ¶ 19).

If the parties to the *Niagara* Litigation disagreed over a confidentiality designation, the protective order established a procedure under which the parties would provide notice of the specific designation and attempt to resolve the dispute. (*Id.* ¶ 10.) If the parties could not reach agreement, the protective order allowed the party seeking removal of the designation to move the *Niagara* court for relief. (*Id.*)

The protective order strictly limited the use or disclosure of Confidential Information to the *Niagara* Litigation "or related litigation between the parties," and the order barred the use or disclosure of Confidential Information "to any person or entity not entitled under this Protective

Order to receive it, unless agree to in writing by all parties to this action or as authorized by further order of the Court." (*Id*. ¶ 7.) The protective order also obligated the parties to return or destroy all Confidential Information within 60 days of the litigation's conclusion, with counsel of record permitted to retain a subset of pleadings; deposition transcripts and exhibits; trial exhibits; and work product containing Confidential Information. (*Id*. ¶ 16.) Finally, the protective order survived the termination of the *Niagara* Litigation. (*Id*. ¶ 18.)

Niagara agreed to the production of its highly confidential information in the *Niagara* Litigation because its products were at issue in that case. Plastipak had accused Niagara products of infringing various Plastipak patents. That made Niagara's confidential product information directly relevant. And Niagara's financial information was relevant to the damages claimed by Plastipak for the alleged infringement.

When Plastipak informed Niagara that Ice River requested Plastipak to produce documents from the *Niagara* Litigation, Niagara advised that it objected to the production of documents that reflected Niagara's Confidential Information, such as product development and financial information, since such information is both highly sensitive and irrelevant to the current litigation. (Oct. 28, 2019 letter from A. Wheeler to W. Reichel, Finn Decl. Ex. 7, ECF No. 39-7.) As an alternative, Niagara proposed that Plastipak prepare a log of the materials containing Niagara Confidential Information in its possession, so that Ice River could notify Niagara if it believed any of those documents were improperly designated as Confidential or otherwise should be produced. (*Id*.) In that way, Niagara could consider allowing the documents to be produced, and if it refused to do so, Ice River could make a targeted motion to compel production that would narrow the issues for this Court to consider. (*Id*.) Plastipak did not prepare a log, and on November 18, 2019, Ice River filed its broad Motion to Compel. (ECF No. 35.)

**Argument**

I. **The Court Should Protect Niagara's Confidential and Sensitive Business Information from its Competitors by Enforcing the Protective Order Entered by its Sister Court in the *Niagara* Litigation**

Since Plastipak has already produced non-confidential materials from the *Niagara* Litigation to Ice River, Ice River's pending Motion to Compel asks this Court to require Plastipak to produce all of Niagara's Confidential Information that Plastipak retained from the *Niagara* Litigation. (*See* Oct. 21, 2019 email from W. Reichel to H. Finn, Finn Decl. Ex. 4, ECF No. 39-4; *see also* Defs.' Mem. in Supp. of Their Mot. to Compel Pl. to Produce Docs. from the Prior Related Litig., ECF No. 38 ("Defs. Mot."), at 2–3.) Given the sensitive nature of Niagara's Confidential Information, and Ice River's failure to prove how the Confidential Information is relevant to the current litigation, this Court should instead enter an order protecting Niagara's Confidential Information from wholesale disclosure.

It would be harmful to Niagara to have its sensitive product development and financial information disclosed to its competitor Ice River, with whom it is not even in a lawsuit. (*See* Cridlebaugh Decl. ¶ 11.) Federal courts have repeatedly recognized that such information is entitled to a high degree of protection. They "dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the disclosor of scientific information." *Andrx Pharm., LLC v. GlaxoSmithKline, PLC*, 236 F.R.D. 583, 586 (S.D. Fla. 2006) (*quoting Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988); *see also Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc.*, 236 F.R.D. 146, 148 (W.D.N.Y. 2006) ("Recognizing the sensitive nature of proprietary technical information, courts generally afford more protection to it than to ordinary business information."); *Motorola, Inc. v. Interdigital Tech. Corp.*, No. Civ.A. 93-488-LON, 1994 WL

16189689, at *2 (D. Del. Dec. 19, 1994) ("In a patent case, maintaining the integrity of the protective order is an especially serious concern."); *Safe Flight Instrument Corp.*, 682 F. Supp. at 22 (collecting cases). "The risk of competitive injury is particularly high when the opposing party is a business competitor." *Bailey v. Dart Container Corp. of Mich.*, 980 F. Supp. 560, 583 (D. Mass.), *on reconsideration in part on other grounds*, 980 F. Supp. 584 (D. Mass. 1997); *see also Echostar Satellite LLC v. Viewtech, Inc.*, Civil No. 07CV1273 W (AJB), 2009 WL 10672432, at *3 (S.D. Cal. July 11, 2009) (disclosure of financial records to business competitors, "even with a protective order, could cause . . . great harm."). This is especially true for Niagara, which is a private company that carefully maintains the privacy of its financial and technical data. (Cridlebaugh Decl. ¶ 7.)

Ice River's demand that Plastipak produce all of Niagara's Confidential Information that Plastipak retained from the *Niagara* Litigation is particularly improper given its failure to show or explain how competitively sensitive information about Niagara's products and financial information is relevant in the current dispute. As the party seeking production of Niagara Confidential Information, Ice River has the burden "to establish that the information is sufficiently relevant and necessary to [its] case to outweigh the harm disclosure would cause to the person from whom [it] is seeking the information." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2043 (3d ed. 2010), citing *Bruno & Stillman, Inc. v. Globe Newspaper Co*., 633 F.2d 583, 597 (1st Cir. 1980). Niagara produced its Confidential Information in the *Niagara* Litigation because its technical information was relevant to Plastipak's claims that Niagara's products infringed on Plastipak's patents, and its financial data was relevant to the calculation of alleged damages. In this case, no Niagara products are at issue, and Niagara's financial information is utterly irrelevant.

Ice River makes the unsupported generic assertion that "third-party documents from the *Niagara* Litigation involving seven (7) of the ten (10) patents at issue in this case are relevant to the claims and defenses in this litigation." (Defs. Mot. at 4.) Ice River provides no explanation as to how or why any of the requested Niagara Confidential Information is relevant. This broad contention fails to satisfy what is required to show relevance, let alone to establish the necessity of gaining access to a direct competitor's sensitive confidential information in a case that is about Ice River's alleged infringement, not Niagara's products.

Ice River also cites several cases in which courts have ordered the production of claim charts, invalidity, infringement, and damages contentions from prior litigation on the same patents. (*Id*. at 5, citing cases.) In the only case from this district, *Koninklijke Philips N.V. v. Wangs Alliance Corp.*, Civil Action No. 14-12298-DJC, 2018 WL 283893, at *5 (D. Mass. Jan. 2, 2018), the court ordered production of invalidity contentions, which do not involve the disclosure of an alleged infringer's confidential information. The court in *AbbVie Inc. v. Boehringer Ingelheim International GmbH*, Civil No. 17-cv-01065-MSG-RL, 2019 WL 1571666, at *1 n.3 & *2 (D. Del. Apr. 11, 2019) did permit the discovery of a third party's statutorily-mandated infringement as well as validity contentions, but in that case the third party consented to the disclosure provided its confidential information was redacted and it was given the opportunity to review the redactions before production. *Id*. And in *Finjan, Inc. v. Zscaler, Inc.*, Case No. 17-CV-06946-JST (KAW), 2019 WL 1543514 (N.D. Cal. Apr. 9, 2019), the prior litigation involved the same defendant as in the current litigation, not a third party, and the defendant agreed to produce its infringement, invalidity, and damages contentions from the prior litigation (brought by a different plaintiff accusing the same product of infringement). *Id*. at *3.

None of these cases support Ice River's broad demand for all documents from a prior litigation that include a third party's unredacted confidential information.

Niagara's request for a protective order is also appropriate here because it asks this Court to enforce a protective order already entered by its sister court in the *Niagara* Litigation that prohibits Plastipak from producing Niagara's Confidential Information unless agreed to by Niagara or authorized by order of the *Niagara* Litigation court. (Niagara Protective Order ¶ 7.) Ice River's Motion to Compel disregards this prior, valid order from another federal court that prohibits production in this case of Niagara's Confidential Information. *See* Fed. R. Civ. P. 26(b)(1) (describing scope of discovery "[u]nless otherwise limited by court order"). Federal courts follow the principle that "a protective order that concerns the preservation of privileges and confidentiality endures beyond the closing of a case, and other courts should not disregard such a protective order." *Mona Vie, Inc. v. Amway Corp.*, Civil Action No. 08-CV-02464-WDM-KLM, 2009 WL 524938, at *3 (D. Colo. Mar. 2, 2009) (citing cases). Since Ice River essentially seeks a modification of the *Niagara* Litigation's protective order, its request should have been made to the *Niagara* Litigation court that entered the protective order. *See id.*, citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990). "As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed." *United Nuclear Corp.*, 905 F.2d at 1427. "The Court does not believe that it is appropriate for Defendant to attempt to circumvent the protections provided in the Protective Order by attempting to obtain Plaintiffs' privileged and/or confidential documents from [a non-party]." *Mona Vie, Inc.*, 2009 WL 524938, at *4; *see also SSL Servs., LLC v. Citrix Sys., Inc.*, Civil Action No. 2-08-cv-158-TJW, 2010 WL 547478, at *1 & *3 (E.D. Tex. Feb. 10, 2010) (denying SSL's motion to compel the production of "expert

reports from both Citrix and its patentee opponents in prior patent litigations that involves one or more of [the GoTo services] in the case" because the burden on Citrix to produce these reports would be great; it would have to petition "the courts in the other cases for a modification of the protective order"); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 26 Fed. R. Serv. 2d 793 (E.D. Pa. 1978) ("[T]he status of confidentiality of these documents [under a protective order] will not be breached by an order of this court. . . .  It is an abuse of the discovery process to order a defendant in the instant litigation to produce all documents which he had submitted in another case under the judicial imprimatur that those documents, when submitted, were judicially protected as confidential."); *cf. In re Keebaugh*, Misc. Action No. 19-163, 2019 WL 5802703, at *3 (E.D. Pa. Nov. 6, 2019) (existence of protective order in current action did not justify vitiating protective order in prior action that limited use of documents to that action).

II.  **In the Alternative, This Court Should Order Plastipak to Produce a Log of Relevant Documents Containing Niagara Confidential Information, and if Plastipak Still Seeks the Production of Particular Documents, This Court Should Order a Procedure for Removing Confidentiality Designations Consistent with the *Niagara* Litigation's Protective Order**

In the alternative, if this Court is inclined to consider Ice River's demand for the production of *Niagara* Litigation materials on the merits, Niagara respectfully requests that the Court enter an order consistent with the *Niagara* Litigation protective order's procedures for removing confidentiality designations.

Specifically, the Court should order Plastipak to prepare a log of the materials containing Niagara Confidential Information that Plastipak retained from the *Niagara* Litigation and that Plastipak believes is "relevant to any party's claim or defense" in the current litigation. *See* Fed. R. Civ. P. 26(b)(1).  The log should contain a degree of detail consistent with a privilege log marked with the highest level of confidentiality permitted under the current suit's protective

order. If Ice River believes that specific material from the log is either improperly marked as confidential or subject to production despite its confidentiality, Ice River should provide written notice to Niagara identifying the document and explaining Ice River's position. The parties will then attempt to resolve the dispute without court intervention (*e.g.*, by removing the confidential designation, producing a redacted version of the material, or allowing the production under the current lawsuit's protective order). If the parties cannot reach agreement on the matter within seven days after receipt of the notice, Ice River may request an order from this Court compelling production. (*See* Niagara Protective Order at ¶ 10.)

Such a process would have several advantages: it would avoid a wholesale disclosure of Niagara's highly sensitive business information to its competitors, regardless of its discoverability in the current litigation; it would allow the parties to negotiate over specific material rather than engage in the generic debate over the parties' rights that Ice River's current motion to compel has necessitated; and it would narrow the remaining disputed issues so that this Court can focus on the precise nature of the material and Ice River's particular need for it.

## Conclusion

For the foregoing reasons, Niagara respectfully requests that the Court grant its motion for a protective order prohibiting the production in this case of Niagara Confidential Information originally produced in the *Niagara* Litigation. In the alternative, Niagara respectfully requests that the Court order: 1) Plastipak to produce a log (marked with the highest level of confidentiality permitted under the current suit's protective order) of the discoverable material in its possession from the *Niagara* Litigation that contains Niagara Confidential Information, containing a level of detail consistent with a privilege log; 2) Ice River to produce written notice to Niagara identifying the material from the log that is improperly marked as confidential or

subject to production despite its confidentiality, and explaining its reasoning; and 3) if the parties cannot reach agreement on the matter within seven days after receipt of notice, Ice River may move the Court for an order compelling production of the disputed material.

Dated: December 6, 2019				Respectfully submitted,

				*/s/ Howard P. Goldberg*
				Howard P. Goldberg, BBO #654316
				MANNING GROSS + MASSENBURG LLP
				125 High Street, 6th Floor
				Boston, MA 02110
				Telephone: (617) 670-8800
				Facsimile: (617) 670-8801
				hgoldberg@mgmlaw.com

				*/s/ Glen E. Summers*
				Glen E. Summers (*Pro Hac Vice* pending)
				Alison G. Wheeler (*Pro Hac Vice* pending)
				BARTLIT BECK LLP
				1801 Wewatta St., Suite 1200
				Denver, CO  80202

				Mark L. Levine  (*Pro Hac Vice* pending)
				BARTLIT BECK LLP
				Courthouse Place
				54 W. Hubbard St., #300
				Chicago, IL  60654

				**Counsel for Non-Party Niagara Bottling, LLC**

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 6th day of December, 2019, I caused a true and correct copy of the foregoing document to be served on all counsel of record by operation of the Court's Electronic Case Filing System.

                   */s/ Howard P. Goldberg*
                   Howard P. Goldberg