# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PLASTIPAK PACKAGING, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>ICE RIVER SPRINGS WATER CO. INC. AND ICE RIVER SPRINGS USA, INC. | CIVIL ACTION NO. 1:19-cv-11193-IT |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH THE COURT'S AUTOMATIC PATENT DISCLOSURES AND COMPLETE INTERROGATORY RESPONSES**

# TABLE OF CONTENTS

I. Introduction ................................................................................................................................ 1

II. Statement of Facts ..................................................................................................................... 2

   A. Ice River's Responses to Interrogatories Nos. 1-3. ............................................................... 3

   B. Ice River's Preliminary Non-Infringement Disclosure. ........................................................ 6

III. Legal Standard .......................................................................................................................... 8

IV. Argument .................................................................................................................................. 8

   A. The Court should deny Plastipak's motion to compel further responses to Interrogatories Nos. 1-3 ........................................................................................................................................ 9

      1. Interrogatory No. 1 ............................................................................................................. 9

      2. Interrogatory No. 2 ........................................................................................................... 10

      3. Interrogatory No. 3 ........................................................................................................... 11

   B. Ice River complied with its Local Patent Rule obligations regarding non-infringement . 12

V. Conclusion ............................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alacritech Inc. v. CenturyLink, Inc.*,
    No. 216CV00693JRGRSP, 2017 WL 3007464 (E.D. Tex. July 14, 2017) ............................. 13

*ASUS Computer Int'l v. Round Rock Research, LLC*,
    No. 12-CV-02099 JST (NC), 2013 WL 6113253 (N.D. Cal. Nov. 20, 2013) ......................... 9

*Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*,
    No. C 16-06180 WHA, 2017 WL 2630088 (N.D. Cal. June 19, 2017) ................................ 13

*Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*,
    333 F.3d 38 (1st Cir. 2003) .................................................................................................... 8

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
    894 F.2d 1318 (Fed. Cir. 1990) .............................................................................................. 8

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 8

D. Mass. L.R. Rule 16.6(d)(1) ............................................................................................... 7, 13

D. Mass. L.R .Rule 16.6(d)(4)(A) ...................................................................................... 2, 7, 13

**I. INTRODUCTION**

Defendants Ice River Springs Water Co. Inc. and Ice River Springs USA, Inc. ("Ice River" or "Defendants") hereby respond to Plaintiff Plastipak Packaging, Inc.'s ("Plastipak") Motion to Compel (the "Motion") as follows:

Ice River has complied with its discovery obligations in responding to Plastipak's Interrogatories and in providing its technical documents and other information under the Court's Scheduling Order (Dkt. 25) and the Local Rules. Plastipak's Motion inappropriately and improperly attempts to solicit additional responses from Ice River that were simply not sought in discovery and not called for by the Court's Scheduling Order or Local Rules.

First, Plastipak alleges Interrogatories Nos. 1-3 have not been sufficiently answered. To the contrary, Ice River diligently worked to respond to the compound and overly broad interrogatories. Moreover, Plastipak does not actually identify specific portions of interrogatories for which a proper narrative response was not provided. Instead, Plastipak attempts to rewrite the interrogatories to cover information it never actually requested. The Court should reject this attempt to compel information that simply has not yet been requested in an interrogatory.

Second, Plastipak alleges Ice River failed to comply with the Local Rules regarding its disclosure obligations of technical information concerning the accused products. This too is incorrect. Ice River has met its obligations and produced the required information under both the Court's Scheduling Order and the Local Rules. In its Preliminary Infringement Disclosure,[1] Plastipak charted alleged infringement of a single accused Ice River product, a 16.9 oz (or 500

---

[1] Plastipak has actually served two Preliminary Infringement Disclosures, an initial and an amendment, two weeks later. Although Plastipak modified its position on infringing features, which it is currently entitled to do, it still did not chart any claims against any bottle other than the 500 mL bottle in the disclosures served upon Ice River.

1

mL) bottle. In its Preliminary Non-Infringement Disclosures, Ice River objected to Plastipak's failure to fully chart any other products against each of the 60 asserted claims. According to the Scheduling Order, Ice River is only required to provide "documents sufficient to show operation of the accused product(s) or method(s) that the patentee identified in its preliminary infringement disclosures."[2] (Dkt. 25 at §1.c.)  Ice River provided documents sufficient to show this for the single product identified in the patentee's infringement disclosures – i.e. the 500 mL bottle. Presumably, Plastipak has done its due diligence of Ice River's publicly available products before it filed the lawsuit. Plastipak could have (and should have) fully charted those products in its Preliminary Infringement Disclosures, but it chose not to.  Having failed to meet its own disclosure obligations, Plastipak's request must fail.

## II. STATEMENT OF FACTS

Plastipak filed its complaint asserting *ten* patents and 178 claims against Ice River on May 28, 2019.  (Dkt. 1.)  At the time of filing, and in seeking an aggressive case schedule, Plastipak highlighted to the Court the alleged simplicity in finding infringement against Ice River and that Plastipak was prepared to go forward with an expedited schedule in view of the years it had to prepare due to an unrelated case against a different defendant related to the same family of patents. (*See, e.g.,* Dkt. 22 (Joint Cases Management Statement) at Sec. III.)[3]

---

[2] The Local Rules would require production of "Documents sufficient to show the composition, operation, construction, and performance of the accused components, elements, or functionality identified in the patentee's infringement claim charts under subsection (d)(1)(A)." L.R .Rule 16.6(d)(4)(A). Regardless, Ice River complied with this obligation as well.

[3] Curiously, at that time, and again highlighting the simplicity of the patent claims and associated infringement determinations, Plastipak asserted to the Court that there was no Markman proceedings on these patents stating that "the [prior] Court did not find it necessary to construe any of the terms of the asserted patents." Unfortunately, that assertion is factually challenged as a full Markman briefing and hearing occurred.

2

While Plastipak may have had years preparing for this case, Defendants did not. Nonetheless, in the last five months, Defendants have been diligently reviewing and analyzing the 60 remaining asserted claims across the 10 asserted patents, responded to numerous interrogatories and document requests, reviewed and charted dozens of prior art references, and analyzed and responded to Plastipak's (deficient) infringement contentions.

> **A.    Ice River's Responses to Interrogatories Nos. 1-3.**

On August 7, 2019, Plastipak served its first set of interrogatories, including the three interrogatories at issue here. (*See* Dkt. 34-1 (Plastipak's First Set of Interrogs. Nos. 1-8).) Ice River timely responded and objected to the First Set of Interrogatories on September 13. (Dkt. 34-2.) Ice River then diligently supplemented its responses to these Interrogatories just a few weeks later, on Oct. 11, 2019. (Dkt. 34-3 at 15 (under seal version).) For each supplemental response for Nos. 1-3, Ice River provided a narrative summary, and thus, no Interrogatory is responded to solely on the basis of Rule 33(d). (*See, e.g., id.*) Ice River has also provided verification of its supplemental response. (*Id.* at 17.)

On October 15, Plastipak alleged "deficiencies" with Interrogatories Nos. 1-3. (*See, e.g.,* Ex. A (10/15/19 W. Reichel email to H. Finn).) In response, Ice River stated it would be supplementing its responses by providing yet additional documents and a verification. (Ex. B (10/17/19 H. Finn email to W. Reichel).) Since then, Ice River has continued to diligently work to provide additional documents and verification. (*See, e.g.,* Dkt. 34-3 at 16 (verification on 10/21/19).)

> ***Ice River has properly responded to Interrogatory No. 1.***

Interrogatory No. 1 reads:

> For each Ice River Product, state Your sales volume by month from October 14, 2014 to the present for all sales in, into, or intended for use in the United States.

3

(Dkt. 34-1 at No. 1 (Plastipak's First Set of Interrogs.).)

Ice River responded by providing limited objections, including that the request was overly broad and that documents would be provided under Rule 33(d). (Dkt. 34-2.) When Plastipak criticized the reliance of Rule 33(d), Ice River supplemented its response by providing its *complete* sales information from 2014 through 2018 on a plant-by-plant basis. (Dkt. 34-3 at 3-4 (Ice River's Supp. Resp.) (Under Seal Version).) Accordingly, Ice River provided the sales information sought by the interrogatory.[4]

Nonetheless, according to Plastipak, Interrogatory No. 1 allegedly requires identifying information of "*who,* whether the Canadian or U.S. entity, is selling to or importing to the U.S. market." (Dkt. 33 at 4 (emphasis in original).) The interrogatory clearly seeks nothing of the kind. It seeks Ice River's "sales volumes" from Oct. 14, 2014 until the present, and that's it. While Plastipak may have wanted to ask for different information in the interrogatory, it did not. Plastipak's attempt to rewrite Interrogatory No. 1 and to have the Court compel an answer is simply inappropriate. Ice River has already properly responded to what was sought.

### *Ice River fully responded to Interrogatory No. 2.*

Interrogatory No. 2 reads:

Identify each facility where You have manufactured, co-packed or had manufactured any Ice River Product sold in, into, or intended for use in the United States from October 14, 2014 to the present, including the facility's name, location, the legal entity that owned or owns, or otherwise controlled or controls, the facility, the identity of Ice River Products made at that facility, and date range during which it made Ice River Products.

(Dkt. 34-1.)

---

[4] Ice River understands that it has not provided sales information for 2019. In view of the close proximity of the end of the year in a matter of weeks, Ice River proposed that the information be provide after the end of 2019.

Ice River fully responded to this Interrogatory. (Dkt. 34-3 at 7-8 (Under Seal Version).) Plastipak's Motion simply ignores the content of Ice River's Response. Plastipak alleges that the Interrogatory seeks "the legal entity" that "owns and/or is responsible for the manufacturing at each facility" where Ice River manufactures "Ice River Products." (Dkt. 33 at 4-5.) Assuming that Ice River's rewrite of the interrogatory is correct, Ice River provided all of this information. Ice River identified the names and locations of each of its facilities. (Dkt. 34-3 at 7-8.) Ice River further identified the Ice River entity that owned or controlled the manufacture of the accused products at each facility. (Dkt. 34-3 at 8.) Although not required for the response, Ice River has even produced an organization chart that reflects the corporate entities and their respective relationship. (*See* H. Finn Decl. at ¶7.)

### *Ice River fully responded to Interrogatory No. 3.*

Interrogatory No. 3 confusingly reads:

> **INTERROGATORY NO. 3:** For each facility identified in response to Interrogatory No. 2, identify each production line used to manufacture any Ice River Product from October 14, 2014 to present, including the internal name used to identify or refer to each production line, the identity of each mold used on each production line, the identity of the machines used in the production line, the identity of each Ice River Product produced on each production line, the date range when said production line was in use, the source of the preforms used on said production line, the source of the closures used on said production line or with the products generated therefrom, and the engineer drawings associated with said production line, including the corresponding injection mold drawings, blow mold drawings, neck finish drawings, preform drawings, closure drawings, and bottle drawings.

(Dkt. 34-1.)

Ice River objected to Interrogatory No. 3 on several narrowly tailored and appropriate grounds, including as compound and overly broad and unduly burdensome. (Dkt. 34-3 at 8-9.) In its Motion, Plastipak essentially admits the Interrogatory is compound, stating it seeks "*what* is being made, and *who* supplied the components used to do the manufacturing." (Dkt. 33 at 5

5

(emphasis in original).) Even though this is compound, Ice River has given this information (to the extent it exists). Ice River provided all of the information regarding "what" is being made at each facility, including the time periods of production. (Dkt. 34-3 at 8-9.) Ice River provided the names of its U.S. manufacturing facilities, the identity of the product lines at each facility, the identity of the products made on each line, and the years that each product line was in use at the specific facility. (*Id.*)

Regarding "components," Plastipak asserts that it sought the identification of what third party was supplying the "preforms" to Ice River. But, as Ice River *repeatedly* told Plastipak's counsel, Ice River makes its own preforms. (*See, e.g.,* Ex. B ("As we discussed, Ice River manufactures all of its preforms, containers ("bottles") and closures (which is undefined) internally and doesn't purchase them from another source. As such, there is no "sale" that takes place as Ice River understands Plastipak's use of that term with respect to preforms or closures.") Thus, there is no other "source" for these components, beyond the entity that does the manufacturing, Ice River.

### B.   Ice River's Preliminary Non-Infringement Disclosure.

Under the Court's Scheduling Order, any obligation that Ice River may have regarding its own Preliminary Non-Infringement Disclosure and related technical documents are based upon Plastipak's Preliminary Infringement Disclosures (the "PIDs"), which were initially served on September 16, 2019. (*See* Dkt. 31 ("Plastipak's PIDs[5]").) In its PIDs, Plastipak makes the conclusory assertion that multiple Ice River water bottles are allegedly infringing. (Dkt. 31-1 at 1 (alleging that Ice River infringes through "its manufacture of at least its 10oz, 16.9oz, and 50.7oz

---

[5] Ice River notes that there is no obligation for Plastipak to have filed its PIDs, yet it did for some unknown reason. This is especially curious since Plastipak never filed its amendment to its PIDs which were served weeks later.

or 1.5 liter bottled water products.").)[6] Despite contending that multiple bottles may infringe, Plastipak charted only a single product, a 16.9 oz (500 mL) bottle. (*See, e.g.,* Dkts. 31-1 to 31-10 (Exhibits A to J from Plastipak's PIDs); *see also,* Dkt. 31-1 at 1 (Plastipak admitting "the claim chart below documents examples of Ice River's infringement using the 16.9 oz bottle as a representative example."); Ex. C (Plastipak's alleged inspection report of the "500 ml Tim Hortons" bottle).) Thus, the only identified product in Plastipak's PID was the 500 mL bottle. The Scheduling Order requires Plastipak to "specify which claims are allegedly infringed and identify the accused product(s) or method(s) that allegedly infringe those claims." (Dkt. 25 at §1.b.) Similarly, the Local Rules require that Plastipak identifies "(i) *each* accused product and/or method; the patent(s) and the claim(s) *each* product or method allegedly infringes; (iii) an element-by-element description of where and how each element of each asserted claim is found in *each* accused product or method…" L.R. Rule 16.6(d)(1)(A)(i)-(iii). Therefore, if Plastipak contends other Ice River bottles infringe, it is required to chart those bottles in its PID. In other words, Plastipak must first chart the infringement of any accused products before Ice River's obligations arise as to those products. L.R. Rule 16.6(d)(4)(A).[7] Ice River produced technical specifications

---

[6] Plastipak has not produced (or made available for inspection) any of the Ice River bottles that it allegedly analyzed.

[7] The 10 oz to 1.5 L bottles, while having some similarities, are all different, with different weights and dimensions. They are/were publicly available, and were presumably reviewed and analyzed by Plastipak when it filed this case. Many of the asserted patents and claims require specific measurements for dimensions and weights; and these dimensions and weights are not the same across all of Ice River's water bottles. (*See, e.g.,* Dkt. 31-5 at 17 ('759 PID Claim Chart) (For example, the '759 patent claim 24 requires the weight of the container to be "11 grams or less").) Plastipak asserts that its "exemplary Ice River bottled water product" meets this limitation, and from this, on information and belief, so do all the rest. But, as Plastipak knows, this argument is unrealistic. (Ex. D (11/14/19 Email from H. Finn to W. Reichel).) The 1.5L bottle does not weigh less than 11 grams. Plastipak admitted it lacks a good faith basis for asserting it does, confirming that it did not have "weight information" "that would allow Plastipak to take a position on this issue." (Ex. E at 4 (11/22/19 W. Reichel Ltr. To H. Finn).) Despite that admission, Plastipak asserts infringement under the same basis.

of the 500 mL product identified in Plastipak's infringement claim charts. It also made available a 500 mL bottle and associated caps available for inspection, complying with the Scheduling Order (Dkt. 25 at §1.c) and the Local Rules.[8]

### III. LEGAL STANDARD

Under the Federal Rules, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and* proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). In determining whether the information sought is proportional to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Further, "[a] litigant may not engage in merely speculative inquiries in the guise of relevant discovery." *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003) (quoting *Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1328 (Fed. Cir. 1990).

### IV. ARGUMENT

The Court should deny Plastipak's premature and confusing motion to compel. Ice River is and has been diligently responding to Plastipak's discovery, and has answered Plastipak's compound and overly burdensome interrogatories. Similarly, Ice River has met its Preliminary Non-Infringement Disclosure obligations in view of the single charted accused product identified by Plastipak. Moreover, to the extent some information was properly sought, is not objectionable, and has not been provided, Plastipak never communicated these deficient issues to Ice River. In

---

[8] Ice River also has historical prototypes and developmental samples available for inspection.

fact, it's still not clear, even from the Motion, what additional information is being sought under which Interrogatory, the Court's Scheduling Order or the Local Rules.

    **A.    The Court should deny Plastipak's motion to compel further responses to Interrogatories Nos. 1-3**

        **1.  Interrogatory No. 1**

Interrogatory No. 1 seeks a summary of Ice River's sales information. Ice River properly responded, well before Plastipak filed this Motion, stating:

| 24 pack equivalent cases sold per year by plant | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Year/Plant | Morganton | Marianna | Kentland | Pittsfield | High Springs | Allentown | 706 | Miami | Total |
| 2018 | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| 2017 | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| 2016 | ■ | ■ | ■ | ■ | ■ | ■ | ■ |  | ■ |
| 2015 | ■ | ■ | ■ | ■ | ■ | ■ |  |  | ■ |
| 2014 | ■ | ■ | ■ | ■ | ■ |  |  |  | ■ |
| Total | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ |

| Year/Plant | Feversham | Calgary | Amaranth | Chilliwack | | | | Total |
|---|---|---|---|---|---|---|---|---|
| 2018 | ■ | ■ | ■ | ■ | | | | ■ |
| 2017 | ■ | ■ | ■ | ■ | | | | ■ |
| 2016 | ■ | ■ |  |  | | | | ■ |
| 2015 | ■ | ■ |  |  | | | | ■ |
| 2014 | ■ | ■ |  |  | | | | ■ |
| Total | ■ | ■ | ■ | ■ | | | | ■ |

(Dkt. 34-3 at 7 (under seal version).)[9]  By providing its annual sales information, Ice River sufficiently and completely answered this Interrogatory.[10]

---

[9] The highly confidential numbers have been redacted from for this brief, but are included in Plastipak's Motion filed under seal. (Dkt. 34-3.)

[10] Ice River objected to this Interrogatory as overly broad.  Plastipak cannot dictate a specific format or granular level of sales data it wants (such as only on a "monthly" basis rather than the less burdensome and more complete, yearly information).  *See, e.g., ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099 JST (NC), 2013 WL 6113253, at *1 (N.D. Cal. Nov. 20, 2013) (Where accused infringer produced annual sales information, denying motion to compel to produce monthly or quarterly sales information, because the patentee "has not shown the inadequacy of already-produced sales data or the need for sales data in a quarterly, rather than annual, basis.").

9

Plastipak now alleges Interrogatory No. 1 calls for an identification of "who" (or "what entity") makes the Ice River sales of the Ice River accused products. (Dkt. 33 at 4; *see also, id.* at 7.) The Interrogatory does not request this. (Dkt. 34-1 at No. 1 (seeking "sales volume by month from October 14, 2014 to the present for all sales in, into, or intended for use in the United States.").) As shown above, Ice River fully responded by providing total annual sales for each manufacturing facility from 2014 until 2018.[11]

In short, there is a reason Plastipak's argument sections do not identify a single interrogatory that calls for the information the argument is seeking to compel. (*See, e.g.,* Dkt. 33 at 7-9 (Sec. IV.A.).) The interrogatory does not exist. Plastipak cannot compel an answer to a question it never asked. The Court should deny the request to compel as to Interrogatory No. 1.

**2. Interrogatory No. 2**

Plastipak's argument with respect to Interrogatory No. 2 fails to identify an Interrogatory that actually requests the information and responses that Plastipak seeks in its Motion. Interrogatory No. 2 does not seek the information that Plastipak now seeks to compel. The only specific deficiency Plastipak alleges here appears to be that this interrogatory seeks "the legal entity" that "owns and/or is responsible for the manufacturing at each facility" where Ice River manufactures "Ice River Products." (Dkt. 33 at 4-5.)[12] Ice River has already provided this information before Plastipak's Motion was filed. (Dkt. 34-3 at 7-8 (Ice River's Supp. Resp.) (Under Seal Version).)[13] These responses were also verified. (*Id.*)

---

[11] Ice River intends to supplement this Response with the information for 2019 when that information becomes available, and to otherwise supplement according to its obligations under Rule 26.

[12] This is the ***only*** portions of Plastipak's Motion that refers to Interrogatory No. 2 and what it allegedly calls for.

[13] Ice River identified all of its manufacturing facilities (Dkt. 34-3 at Supp. Resp. to Interrog. No. 2), their location (as that is the internal name they are given, their location) (*id.*), the specific Ice River entity that "manufactured accused products" at each identified location (*id.*), and it also

10

Despite the verification, Plastipak asserts that an article from two years ago which purportedly shows that one facility "was owned by a different legal entity," somehow indicates that Ice River has not fully responded (although to what interrogatory, is still unclear). (Dkt. 33 at 8.) According to Plastipak, because of this news article about another entity purchasing land, Plastipak "does not know which legal entity controlled the manufacture and sale of accused products at that facility." (Dkt. 33 at 8.) But Ice River provided this exact information. What Plastipak now seeks is information on alleged leaseholders of the land, which is irrelevant to the case and not requested in the discovery.[14]

Thus, by identifying each facility that makes accused products, the identity of the Ice River entity responsible for manufacturing at each facility, and the name of each product line at each facility, Ice River has more than sufficiently responded to the compound and overly broad Interrogatory. To the extent Plastipak seeks additional information, which is relevant and proportional to the needs of the case, Plastipak must issue another Interrogatory. It cannot backdoor in yet another subpart (one that is not even actually in the request) through a motion to compel.

### 3. Interrogatory No. 3

Plastipak again fails to specify what information actually called for by Interrogatory No. 3 is missing from Ice River's responses to the interrogatory. At most, Plastipak asserts that the

---

identified what products were made at each facility and the specific dates (to the extent known) products were made there (*id.* at Resp. to Interrog. No. 3).

[14] Ice River told Plastipak's counsel that the Ice River entities identified in Response to Interrogatory No. 2 are the entities that controlled the manufacture and sale of accused products at the identified facility. (Dkt. 34-3 at Supp. Resp. to Interrog. No. 2.) Ice River further explained that the land is leased, but those leaseholders do not control or manufacture the products as requested by Interrogatory No. 2. Thus, the information Plastipak now seeks (which is beyond Interrogatory No. 2) is irrelevant, and should not be discoverable in any event. The Ice River entity that was identified is the responsible entity.

11

interrogatory seeks "*what* is being made, and *who* supplied the components used to do the manufacturing." (Dkt. 33 at 5 (emphasis in original).) In responding to Interrogatory No. 3, Ice River compiled a chart of all of the information requested, including details for each of the following items in each column:

| PRODUCTION FACILITY | Blow Molder | Bottle Sizes | Years of Production |
|---|---|---|---|

(Dkt. 34-3 at Supp. Resp. to Interrog. No. 3) (Under Seal Version).)

In its Motion, Plastipak seeks to expand its actual request well beyond the multi-subpart Interrogatory it already issued. For example, it claims it is not able to determine "from public records whether Ice River manufacturers *[sic]* preforms and closures…that are sold to other companies who convert them into finished containers." (Dkt. 33 at 8-9.) But no interrogatory seeks this information. While Plastipak's Motion seeks the identities of customers of Ice River, the actual interrogatory is directed to information concerning Ice River's manufacturing facilities – not identification of an Ice River customer. Because Plastipak cannot tie the information it is seeking to the actual request of Interrogatory No. 3, the Court should deny Plastipak's request to compel further responses to Interrogatory No. 3.

**B. Ice River complied with its Local Patent Rule obligations regarding non-infringement**

Ice River fully complied with its obligations under the Court's Scheduling Order and the Local Rules by providing documents sufficient to show the construction of the accused product identified in Plastipak's Preliminary Infringement Disclosures.

As discussed above, Plastipak only identified a single 16.9 oz (or 500 mL) Ice River product, and this is the only product it charted. (*See, e.g.,* Dkts. 31-1 to 31-10 (Exhibits A to J from Plastipak's PIDs); Dkt. 31-1 at 1 (Plastipak admits "the claim chart below documents examples of Ice River's infringement using the 16.9oz bottle as a representative example.").) After

receiving the Plastipak's PIDs, Ice River provided technical documents sufficient to show the construction of the accused 500 mL bottle -- the only bottle identified in Plastipak's Preliminary Infringement Disclosure, both the original and the amended.

Courts applying similar procedures affirm that the *patentee* must chart all accused products. L.R. Rule 16.6(d)(1); *see also, Alacritech Inc. v. CenturyLink, Inc.*, No. 216CV00693JRGRSP, 2017 WL 3007464, at *4 (E.D. Tex. July 14, 2017) (striking infringement contentions for improperly relying on representative products); *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, No. C 16-06180 WHA, 2017 WL 2630088, at *4 (N.D. Cal. June 19, 2017) (same). Plastipak may not simply rely on a single product, and in conclusory fashion allege it is "representative," as it has done here. *See, e.g., Ids.* Further, the Court's Scheduling Order and the Local Rules are equally clear: they require identifying each accused product that infringes each asserted claim. (Dkt. 25; L.R. Rule 6.6(d)(1).) Under the Local Rules, Ice River is then only required to provide "Documents sufficient to show the composition, operation, construction, and performance of the accused components, elements, or functionality ***identified in the patentee's infringement claim charts*** under subsection (d)(1)(A)." (L.R. Rule 16.6(d)(4)(A); *see also,* Dkt. 25 at §1.c (requiring technical documents onl for those product Plastipak properly identified).) Ice River provided documents sufficient to show the construction of the single product "identified in the patentee's infringement claim chart"—the 500 mL bottle. As Plastipak only charted a single product, Ice River was only required to provide technical documents regarding that single product.

Ice River provided the technical documents for the 500 mL bottle and made the product available for inspection, and thus it met its obligations.[15] To the extent Plastipak timely

---

[15] While not currently required, and well outside the obligations of the Preliminary Patent Disclosures, Ice River has produced bottle specifications to Plastipak beyond the 500 mL bottle.

13

supplements its PID to demonstrate a basis for infringement by other products, Ice River will comply with its ongoing discovery obligations and update its Preliminary Non-Infringement Disclosures for those other accused products. The Court should deny Plastipak's Motion to Compel additional technical documents for products it has not evidenced any alleged infringement.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Ice River respectfully requests that the Court deny Plastipak's Motion to Compel.

Dated: Dec. 6, 2019.                                  Respectfully submitted,

                                                      */s Herbert H. Finn*

                                                      Herbert H. Finn (*Pro Hac Vice*)
                                                      finnh@ gtlaw.com
                                                      Tiffany A. Blofield (*Pro Hac Vice*)
                                                      blofieldt@gtlaw.com
                                                      GREENBERG TRAURIG, LLP
                                                      77 West Wacker Drive
                                                      Suite 3100
                                                      Chicago IL  60601
                                                      (312) 456-8427

                                                      Zachary C. Kleinsasser (BBO #664291)
                                                      kleinsasserz@gtlaw.com
                                                      GREENBERG TRAURIG, LLP
                                                      One International Place
                                                      Suite 2000
                                                      Boston, MA 02110
                                                      (617) 310-6293

                                                      *Attorneys for Defendants*
                                                      ICE RIVER SPRINGS WATER CO., INC.
                                                      and ICE RIVER SPRINGS USA, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 6th day of December, 2019.

                                         */s Herbert H. Finn*
                                       Herbert H. Finn