UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **PLASTIPAK PACKAGING, INC.,**<br><br>     Plaintiff,<br><br>     v.<br><br>**ICE RIVER SPRINGS WATER CO. INC., AND**<br>**ICE RIVER SPRINGS USA, INC.,**<br><br>     Defendants. | **CIVIL ACTION NO. 1:19-cv-11193-IT**<br><br>**(LEAVE TO FILE GRANTED ON DECEMBER 16, 2019 D66)** |

**PLASTIPAK PACKAGING, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH THE COURT'S AUTOMATIC PATENT DISCLOSURES AND COMPLETE INTERROGATORY RESPONSES**

After Plastipak filed its motion to compel, Ice River produced additional samples and provided additional information regarding its production. The following information, which should have been produced either in compliance with the Local Rules or in response to Plastipak's discovery requests, remains outstanding:

1. **<u>An identification of the complete set of technical drawings for each production line identified in Ice River's response to Interrogatory No. 3.</u>**

- Ice River should be compelled to identify the complete set of technical documents corresponding to each of its production lines (including each size made on each line) identified in its response to Interrogatory No. 3.
    - Each production line will have at least the following set of documents showing the features and dimensions of the product made on that line: (1) a preform drawing, (2) a bottle drawing, (3) a neck finish drawing, and (4) a closure drawing. Ice River has not produced a full set of drawings for any production line.
    - Typically, there are also drawings associated with each preform mold and blow mold that show the actual construction of the molds used to make each product. Each preform mold cavity has its own number, which remains visible on the neck of each preform and bottle. Because each design has a stated tolerance range for certain dimensions, and because each production line has its own distinct molds, the products made on each production line may vary slightly in design and/or actual dimensions.
- In its opposition, Ice River made a general representation to the Court that it has produced final technical specifications for its 500 ml commercial bottle, and on December 10 Ice River provided Plastipak a list of Bates numbers corresponding to that representation. Even taking that representation at face value, Ice River has failed to provide (a) a verified mapping of the ***full set*** of final technical drawings to each 500 ml production line, and to the corresponding sales data for each plant; (b) any technical

1

documents for production lines manufacturing the other bottle sizes identified in Plastipak's infringement contentions and Ice River's response to Interrogatory No. 3; and (c) an identification of the source of components (preforms and closures) used to manufacture each accused bottle.  It does not appear to Plastipak that Ice River has identified or produced the complete set of technical documents for the 500 ml bottle or *any* other of its production lines.

- Plastipak also needs to know where infringing preforms were made, and by whom, as the preforms and bottles are separate accused products in the case.  This information is highly relevant—indeed, fundamental—to the issue of infringement in this case.  Some of the patent claims are directed to the preform and methods for converting the preform into a container.  Plastipak needs Ice River's preforms to conduct the infringement analysis.

- Based on the information publicly available to it, Plastipak identified the various bottle sizes it believes to be infringing, triggering Ice River's obligation to produce information on those accused products under the Local and Federal Rules.  Ice River has already provided some information about where the accused products were made and when, but inexplicably refuses discovery of the most relevant technical information about these products.  Plastipak cannot provide an element-by-element chart for all infringing bottle sizes against the precise measurements in the claims until Ice River provides the technical drawings showing the applicable preform and bottle dimensions.[1]

---

[1] This information is responsive to Plastipak's Interrogatory No. 3, and is part of the required disclosures under the Local Rules.  Plastipak also requested these documents in RFP requests served in August.  These discovery requests are not limited to only "accused products" – each request asks for information about any Ice River water bottle 1.5L or smaller, and the corresponding preforms and closures.   In any event, Plastipak identified a variety of bottle samples as "accused products" in its contentions and complaint, even though it could not provide an element by element chart for each infringing bottle.

2.  **Physical samples of preforms and bottles for each production line identified in Ice River's response to Interrogatory No. 3.**

- Ice River should be compelled to identify physical samples corresponding to each of its production lines dating back to 2014. Each production line produces millions of preforms and containers each year, and asking for a few samples from each line is not burdensome in light of the needs of the case.

- Prior to the filing of this motion, Ice River had produced ten unidentified preform samples, and no bottle samples.[2] Two days ago, on December 11, Ice River provided notice that two unidentified 500 ml bottles and one 1.5L bottle were available for inspection, and Plastipak inspected these bottles on December 12. At the same inspection, Ice River also made five unidentified closure samples available for inspection.

- Ice River should be compelled to identify on which production lines these preform and bottle samples were manufactured. Ice River should be compelled to provide preform and bottle samples for all other production lines. Moreover, inspection of one to two bottle samples at Ice River's counsel's office is insufficient for purposes of Plastipak's infringement analysis. Plastipak requires that samples be made available for testing, which requires specialized measurement equipment and/or requires the bottle to be cut (e.g. to independently measure the weight of the neck finish).[3] Thus, Ice River should be compelled to make a certain number of samples from each production line available for Plastipak to test.[4]

---

[2] Ice River also made a number of "historical prototypes and development samples" available for inspection, including preforms and closures, that are not relevant to the infringement analysis.

[3] Ice River's statement that Plastipak has failed to make available for inspection the product tested in its infringement contentions is not accurate. Plastipak produced additional images of the product on November 14, 2019, and provided notice to Ice River on that date that the physical products were available for inspection at its counsel's Boston office.

[4] Ice River was required to produce sufficient samples of the accused products under the Local Rules' required disclosures. Additionally, Plastipak requested 10 samples of each Ice River

3

> 3. **Complete manufacturing and sales data, including for any preform sales**

- Ice River's response to Interrogatory No. 1 is not complete. It discloses only sales volumes by plant, not by product. Ice River does appear to have provided product-by-product sales volume information in its document production, but that information is for U.S. plants only—that document includes no information for products made in Canada and subsequently imported into the United States. Further, the document is inconsistent with the response to Interrogatory 1. Neither its interrogatory response nor its production document includes any preform sales, or alternatively a verified statement that no such sales exist.

- It is Plastipak's understanding that the Canadian arm of Ice River manufactures some of the accused products in Canada, which are subsequently imported into the United States. This may include both preforms and bottles. The Court should compel Ice River to provide complete sales information, on a product by product basis, for all accused products made in Canada that are imported into the United States or sold for importation into the United States. *Murata Manufacturing Co. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934, 946 (N.D. Ill. 2006) ("Murata has pled a claim for inducement of infringement . . . . Foreign sales information, as Bel Fuse admits, is relevant to that claim."); *Polaris Innovations Ltd. v. Kingston Technology Co., Inc.*, No. CV1600300CJCRAOX, 2017 WL 3275615, at *6-*7 (C.D. Cal. Feb. 14, 2017) (granting motion to compel foreign sales data; collecting cases).

- Plastipak has reason to believe that Ice River has been selling preforms to other entities. Ice River recently sold many of its U.S. bottling plants. For at least one of these plants

---

Product, including preforms, bottles, and closures in its RFP requests served in August. To date, Ice River has only produced 10 preforms. Plastipak will likewise be producing a complete mold run of its practicing preforms and bottles to Ice River, even though not required by the Local Rules, and even though of far less relevance to the issues in the case.

(Allentown), it appears that the purchasing party has continued to manufacture the *same* accused bottles, with the *same* IR preform mold numbers on the neck, made from the *same* rPET plastic. Thus, Ice River is likely providing Ice River preforms to the purchasing party to be blown into bottles at the Allentown facility, or is at least selling its rPET plastic to that party for use in the manufacture of infringing products. Ice River's counsel has stated that no preform sales have occurred, but Ice River has refused to provide a verified statement in its response to Interrogatory No. 1 stating that no preform sales have occurred.

4. **<u>A verified statement of the entities responsible for the sale and manufacture of the accused products.</u>**

- Ice River should be compelled to provide a verified statement as to which of its legal entities is responsible for the manufacturing and sale of each accused products (both preforms and bottles),[5] so that Plastipak can determine whether the proper parties are named in this case.

- Ice River has provided an organization chart suggesting that each of its plants was owned by a different legal entity. Plastipak needs to know whether any of these entities have actually made and sold the accused products, so those entities can also be held liable for infringement in this case.

- Ice River should also be compelled to state the current owner of each of its former U.S. plants. As described above, it appears that at least some of the purchasing parties have continued to manufacture infringing products re-using Ice River's molds. If Ice River sold its entire manufacturing lines to another entity—including molds Ice River knows will manufacture products that infringe Plastipak's patents—that is yet another example of Ice River inducing infringement of Plastipak's patents.

---

[5] The sales information is requested in Interrogatory No. 1. Plant ownership information is requested in Interrogatory No. 2.

Dated: December 16, 2019

/s/ James Sebel
Christopher R. Dillon (BBO #640896)
dillon@fr.com
Whitney A. Reichel (BBO #663599)
wreichel@fr.com
James Sebel (BBO #693531)
sebel@fr.com
Alexander M. Pechette (BBO #698586)
pechette@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel: (617) 542-5070
Fax: (617) 542-8906

*Attorneys for Plaintiff*
*Plastipak Packaging, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 16th day of December 2019.

/s/ James Sebel
James Sebel